UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **REGINALD ADAMS,**<br>    Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1543** |
| **CITY OF NEW ORLEANS, ET AL.,**<br>    **Defendants** | **SECTION: "E" (3)** |

### ORDER AND REASONS

Before the Court is a motion to dismiss filed by Defendant Ronald Bodenheimer.[1] For the reasons that follow, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND[2]

This case arises from the wrongful conviction and imprisonment of Plaintiff Reginald Adams for the murder of Cathy Ulfers.

On October 7, 1979, Cathy Ulfers, the wife of a former police officer with the New Orleans Police Department ("NOPD"), was shot seven times at her home.[3] Defendants Martin Venezia and Sam Gebbia, detectives with the New Orleans Police Department ("NOPD"), were assigned to investigate the Ulfers murder.[4] On August 4, 1980, Detective Venezia of the NOPD and Frank Ruiz, a detective employed by the NOPD and/or an investigator employed by or acting as agent of the Orleans Parish District Attorney's office, launched a "joint investigation" into the murder.[5]

---

[1] R. Doc. 74.
[2] The following facts derive from Adams' amended complaint. R. Doc. 71.
[3] R. Doc. 71 at ¶ 36.
[4] *Id.* at ¶ 37.
[5] R. Doc. 71 at ¶ 79.

1

On June 20, 1980, the Seafood City restaurant in New Orleans was robbed.[6] Defendants Frank Ruiz and Jerry Ursin, detectives employed by the NOPD and/or investigators employed by or acting as agent of the Orleans Parish District Attorney's office,[7] were assigned to investigate the burglary.[8] On July 31, 1980, Adams was arrested in connection with the Seafood City burglary.[9]

On September 19, 1980, Ursin, Ruiz, and Venezia questioned Adams "for several hours late into the evening of the 19th and into the early morning of the 20th" without Adams' counsel present.[10] Adams alleges that Detectives Venezia and Ruiz began asking Adams about the Seafood City burglary around 11:30 p.m. on September 19, 1980.[11] Around 1:00 a.m. on September 20, Detective Ruiz, in the presence of Detective Venezia, gave Adams at least two valium pills.[12] The detectives then began questioning Adams about the Ulfers murder.[13] Although Adams said he knew nothing about the murder, Detective Venezia repeatedly suggested Adams was involved in the Ulfers murder.[14] At around 4:15 a.m. on September 20, 1980, Adams falsely confessed to murdering Cathy Ulfers.[15]

At approximately 6:00 a.m., Detectives Venezia, Ursin and Ruiz transported Adams to the Ulfers' home and, along the way, stopped and purchased beer and snacks which they shared with Adams.[16]

---

[6] *Id.* at ¶ 64.
[7] *Id.* at ¶¶ 30–31.
[8] *Id.*
[9] *Id.* at ¶ 77.
[10] *Id.* at ¶¶ 90–91.
[11] *Id.* at ¶ 92.
[12] *Id.* at ¶ 96.
[13] *Id.* at ¶ 97.
[14] *Id.* at ¶¶ 98–99.
[15] *Id.* at ¶ 102.
[16] *Id.* at ¶ 111.

Around 7:00 a.m., Detectives Venezia, Ursin and Ruiz questioned Adams in the parking lot of the Orleans Parish Prison and elicited a second false confession.[17]

On October 9, 1980, Adams was indicted for first-degree murder of Ulfers.[18] These charges were the result of a year-long joint investigation by the NOPD, the Orleans Parish Sheriff's Office and the District Attorney's office.[19] The District Attorney's Office is defined in the allegations as including Bodenheimer.[20] After a jury trial, prosecuted by Bodenheimer and Harold Gilbert, assistant district attorneys in Orleans Parish,[21] Adams was convicted for the murder of Cathy Ulfers in 1983.[22] The Louisiana Supreme Court reversed that conviction in 1989.[23]

In 1990, the Orleans Parish DA's office retried Adams for second-degree murder of Cathy Ulfers, but Bodenheimer did not prosecute the case, as he was no longer working for the Orleans Parish DA's Office.[24]

The prosecutors in the 1990 retrial, Dan Rowan and Darryl Roberts, were not aware of the exculpatory evidence.[25] The exculpatory evidence was known to ADA Bodenheimer and Detectives Venezia, Gebbia, Ruiz and Ursin.[26] Prior to the 1990 trial, Rowan and Roberts consulted with Bodenheimer, who failed to inform the new prosecutors of the exculpatory evidence,[27] in particular the first supplemental police report which was in the Seafood City burglary trial but not in the Cathy Ulfers murder file.

---

[17] *Id.* at ¶ 116-117.
[18] *Id.* at ¶ 120.
[19] *Id.* at ¶119.
[20] *Id.* at ¶ 16.
[21] *Id.* at ¶ 15.
[22] *Id.* at ¶ 139.
[23] *State v. Adams*, 550 So. 2d 595 (La. 1989).
[24] R. Doc. 71 at ¶¶ 33, 222, 228.
[25] *Id.* at ¶ 150.
[26] *Id.* at ¶ 145-147.
[27] *Id.* at ¶ 151.

Adams was again convicted in July 1990 and sentenced to life without parole.[28] The second conviction was affirmed on appeal in 1992, and the Louisiana Supreme Court denied Adams' writ in 1994.[29]

Adams was exonerated in 2014.[30] Following Mr. Adams's release, the DA's Office issued a press release stating that Defendant Bodenheimer and ADA Gilbert "were fully aware of the additional suspects as well as the recovery of the murder weapon and other physical evidence and that their handling of the case amounts to intentional prosecutorial misconduct."[31] On May 5, 2015, Adams filed this suit against Venezia, Gebbia, Ruiz, Ursin, and Bodenheimer in their individual capacities; current Orleans Parish District Attorney Leon Cannizzaro, Jr. in his official capacity; and the City of New Orleans.[32]

On December 14, 2015, Bodenheimer filed a motion to dismiss, arguing he is entitled to absolute immunity with respect to each cause of action asserted against him.[33] Adams filed a response in opposition on January 15, 2016.[34] The Court held oral argument on February 26, 2016.[35]

## STANDARD OF LAW

When deciding a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[36] The Court may consider only the pleadings, the documents attached to or incorporated by reference in the plaintiff's complaint, the facts of which judicial notice may be taken, matters of public

---

[28] *Id.* at ¶ 149.
[29] *Id.*
[30] *Id.* at ¶ 84.
[31] *Id.* at ¶ 19.
[32] R. Doc. 1. Adams filed an amended complaint on November 12, 2015. R. Doc. 71.
[33] R. Doc. 74.
[34] R. Doc. 83.
[35] *See* R. Doc. 97.
[36] *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935, 188 (2014).

4

record,[37] and documents attached to a motion to dismiss "when the documents are referred to in the pleadings and are central to a plaintiff's claims."[38] If the Court accepts materials outside of the pleadings that do not fit within these parameters, the Court must treat the Rule 12(b)(6) motion as a motion for summary judgment pursuant to Rule 56.[39]

For the complaint to survive a motion to dismiss, the facts taken as true must state a claim that is plausible on its face.[40] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[42] A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action."[43] The Court cannot grant a motion to dismiss under Rule 12(b)(6) "unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint."[44]

## ANALYSIS

Adams sues Bodenheimer in his individual capacity[45] and brings the following claims against him:

1. Count 2 *Brady* violation under § 1983: Bodenheimer knowingly and intentionally concealed exculpatory evidence before the 1990 retrial of Adams for the murder of Ulfers;

---

[37] *See U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[38] *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).
[39] FED. R. CIV. P. 12(d).
[40] *Brand*, 748 F.3d at 637–38.
[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[42] *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted).
[43] *Whitley*, 726 F.3d at 638 (citation omitted) (internal quotation marks omitted).
[44] *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).
[45] R. Doc. 71 at ¶ 33.

5

2. Count 4 Manufactured evidence under § 1983: Bodenheimer conspired with the NOPD defendants to fabricate probable cause and elicit a coerced and false confession from Adams regarding the Ulfers murder;

3. Count 5 Conspiracy under § 1983: Bodenheimer conspired with others to intentionally, maliciously, and with reckless disregard and deliberate indifference violate Adams' right to due process and a fair trial under the U.S. and Louisiana constitutions;

4. Count 9 Malicious prosecution under state law: Bodenheimer maliciously prosecuted Adams for the murder of Cathy Ulfers despite knowing the case was based on a demonstrably false confession and despite having in his possession exculpatory evidence; and

5. Count 10 Intentional infliction and/or negligent infliction of emotional distress under state law: Bodenheimer intentionally, maliciously, and with reckless disregard and deliberate indifference to Adams' rights engaged in extreme and outrageous conduct in connection with the investigation and prosecution of Adams.[46]

Bodenheimer argues he is entitled to absolute immunity on each of Adams' claims against him.[47]

I. § 1983 Claims and Absolute Immunity

To state a claim under 42 U.S.C. § 1983, "a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law."[48] Adams alleges that Bodenheimer violated his Fourteenth and Sixth Amendment rights to due process of law and a fair trial.

Prosecutors enjoy absolute immunity from liability in suits brought under § 1983 "for those activities 'intimately associated with the judicial phase of the criminal process.'"[49] The official seeking absolute immunity bears the burden of showing that absolute immunity is justified for the function in question.[50] Absolute immunity "does

---

[46] R. Doc. 71.
[47] R. Doc. 74.
[48] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).
[49] *Kerr v. Lyford*, 171 F.3d 330, 336 (5th Cir. 1999) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).
[50] *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

not extend beyond its scope that existed at common law in 1871, when § 1983 was enacted, nor does it persist unless the policy behind the common-law rule is still applicable."[51] Even when there is a common-law tradition of absolute immunity for a given function, courts consider "whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions."[52] "Not surprisingly, [courts] have been 'quite sparing' in recognizing absolute immunity for state actors in this context."[53]

"[T]he absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself."[54] Thus, when determining whether absolute immunity applies, courts examine "'the nature of the function performed, not the identity of the actor who performed it.'"[55]

### A. Count 2: *Brady Violation*

Bodenheimer argues he is entitled to absolute immunity on Adams' § 1983 claim that Bodenheimer knowingly and intentionally concealed exculpatory evidence from the prosecutors assigned to the 1990 trial of Adams for the murder of Ulfers.[56] Bodenheimer's only argument in support of his contention that he is entitled to absolute immunity

---

[51] *Lampton v. Diaz*, 639 F.3d 223, 226 (5th Cir. 2011).
[52] *Buckley*, 509 U.S. at 269.
[53] *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)).
[54] *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (internal quotation marks omitted).
[55] *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).
[56] R. Doc. 74-1 at 6–7. Bodenheimer notes "[a]t the onset" that Adams "has previously conceded Bodenheimer's absolute immunity for his alleged failure to disclose exculpatory evidence to the defense . . . ." *Id.* at 6 n.1. Adams previously conceded that Bodenheimer "is likely entitled to absolute immunity for his failure to dispose exculpatory evidence to the defense" and Adams agreed to dismiss his *Brady* claim against Bodenheimer. *See* R. Doc. 52 at 6 n.11. Adams also stated, however, that, "[s]hould Mr. Adams become aware of facts to support [a *Brady*] allegation, he intends to seek leave to amend his Complaint accordingly." *Id.* Adams subsequently filed an amended complaint and realleged a *Brady* claim against Bodenheimer, noting that "[i]n 1990, when Defendant Bodenheimer concealed this exculpatory information from [the] ADAs . . . , Defendant Bodenheimer was no longer employed by the DA's office." R. Doc. 71 at ¶ 228; *see generally* R. Doc. 71 at ¶¶ 221–31.

7

Adams' *Brady* claim is the following: "The allegations set forth in ¶'s 221–231 [of Adams' amended complaint[57]] allege a *Brady* violation while Bodenheimer was performing a prosecutorial function as Assistant District Attorney. As such, he enjoys absolute immunity and the *Brady* violation . . . should be dismissed by Order of this Honorable Court.[58] Bodenheimer's argument focuses on *Brady* violations during the 1983 trial of Adams, when Bodenheimer was the prosecutor and entitled to absolute immunity, but Count 2 is directed at Bodenheimer's *Brady* violations in connection with the retrial in 1990.

Adams alleges there were two supplemental police reports containing exculpatory information that were never disclosed to the defense.[59] The first supplemental report, detailing the investigation of the Ulfers murder, was located in the DA's office file for the Seafood City burglary, but not in the Ulfers murder file.[60] Adams alleges Bodenheimer was aware of the exculpatory information contained in the first supplemental report but did not disclose it to the prosecutors assigned to the 1990 murder trial.[61] The second supplemental report also contained exculpatory information regarding the investigation. Copies of the second supplemental report were located in the DA's Office files for both the Seafood City burglary and the Ulfers murder.[62] Adams alleges these are the two reports deliberately withheld from Adams and his counsel.

Adams alleges Bodenheimer, who had access to and was familiar with the files for both the Seafood City burglary and the Ulfers murder, had knowledge of the exculpatory

---

[57] R. Doc. 71.
[58] R. Doc. 74-1 at 7.
[59] R. Doc. 71 at ¶ 123–28.
[60] *Id.* at ¶ 124.
[61] *Id.*
[62] *Id.* at ¶ 128.

8

evidence, including evidence implicating Cathy Ulfers' husband in her murder, information tracing the gun connected to the crime to individuals with no connection to Adams, and ballistics testing confirming that the gun was the weapon used in the murder.[63] Adams alleges that when the prosecutors in the 1990 Ulfers murder trial consulted with Bodenheimer, he concealed the exculpatory information of which he was aware.[64]

When the prosecutors in the 1990 murder trial consulted with Bodenheimer, seven years after Adams was convicted, Bodenheimer had no involvement with the case, as an advocate or otherwise. Indeed, he left the Orleans Parish DA's Office in 1984,[65] and there is no allegation or evidence suggesting Bodenheimer had any prosecutorial or advocacy function with respect to Adams after the 1983 conviction.[66] Prosecutorial immunity does not extend to a defendant's conduct after he is no longer employed as a prosecutor and is no longer acting as an advocate for the state.[67] "[W]here the role as advocate . . . has concluded, absolute immunity does not apply."[68] Accordingly, Bodenheimer is not entitled to absolute immunity for the alleged suppression of *Brady* material when discussing the case with the prosecutors assigned to the 1990 Ulfers murder trial. The motion to dismiss Count 2 is denied.

---

[63] R. Doc. 71 at ¶ 142, 145.
[64] *Id.* at ¶ 150–51.
[65] R. Doc. 71 at ¶ 228. Bodenheimer left the Orleans Parish DA's Office in 1984 and was working for the Jefferson Parish DA's Office when the assistant district attorneys assigned to the second murder trial consulted him. *See id.* at ¶ 33.
[66] Bodenheimer was not the prosecutor assigned to Adams' appeal of his first conviction. *See State v. Adams*, 537 So. 2d 1262, 1263 (La. Ct. App. 1989); *State v. Adams*, 550 So. 2d 595 (La. 1989).
[67] *See Douglas v. Miller*, 864 F. Supp. 2d 1205, 1216 (W.D. Okla. 2012); *Yarris v. Cty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006) ("It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, *so long as they did so while functioning in their prosecutorial capacity."* (emphasis added)); *Houston v. Partee*, 978 F.2d 362, 368 (7th Cir. 1992) (declining "to extend absolute prosecutorial immunity from claims by people whom the prosecutors are no longer prosecuting"). *Cf. Spivey v. Robertson*, 197 F.3d 772, 776 (5th Cir. 1999) (finding absolute immunity applied "[b]ecause the prosecutors were acting as advocates").
[68] *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003).

### B.  Count 4: *Manufactured Evidence*

Bodenheimer alleges he is entitled to absolute immunity on Adams' § 1983 claim for manufacturing of evidence because no allegations were made that Bodenheimer participated in the investigation, as opposed to the prosecution, of Adams.[69] Adams alleges, and there is no dispute, that Bodenheimer was the assistant district attorney assigned to the Bodenheimer case.[70] Adams alleges that, beginning in October 1979, the Orleans Parish DA's Office, including Bodenheimer, and the NOPD conducted a joint investigation into the murder of Cathy Ulfers.[71] Thus, all the allegations concerning the joint investigation are made with respect to Bodenheimer, as well as with respect to the NOPD detectives. Adams further alleges, "Bodenheimer conspired with the NOPD Defendants in the investigation of Mr. Adams, which included fabricating probable cause and eliciting a coerced and false confession from Mr. Adams."[72] Based on these allegations, the Court may reasonably infer that Bodenheimer is liable for the misconduct alleged in Count 4.

"[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor."[73] It is well established that "prosecutors are *not* entitled to absolute immunity when performing 'acts of investigation or administration.'"[74] Indeed, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act,

---

[69] R. Doc. 74-1 at 7–9.
[70] R. Doc. 71 at ¶ 15.
[71] *Id.* at ¶ 84. Adams defines the DA's office to include Bodenheimer. *Id.* at ¶ 16.

[72] *Id.* at ¶ 244.
[73] *Buckley*, 509 U.S. at 273.
[74] *Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012) (quoting *Buckley*, 509 U.S. at 270).

10

immunity should protect the one and not the other."[75] Moreover, a prosecutor is not an advocate "before he has probable cause to have anyone arrested."[76] Adams has made sufficient factual allegations regarding Bodenheimer's involvement in the investigation of the Ulfers murder to support his claim against Bodenheimer for the manufacturing of evidence. Bodenheimer is not entitled to absolute immunity with respect to the investigation of the Ulfers murder. The motion to dismiss Count 4 is denied.

   *C.* Count 5: *Conspiracy*

Adams alleges Bodenheimer conspired with Venezia, Gebbia, Ruiz, Ursin, and others "to intentionally, maliciously, and, with reckless disregard and deliberate indifference, violate Mr. Adams's right to due process and a fair trial."[77] Adams alleges the defendants, including Bodenheimer, committed overt acts in furtherance of the alleged conspiracy, including coercing his confession and manufacturing evidence against him, participating in the joint investigation, ignoring suspects, eliciting a coerced and false confession, concealing and suppressing exculpatory evidence at the time of the 1990 retrial, and choosing to focus the investigation on Adams despite the lack of evidence linking him to the Ulfers murder.[78]

To state a claim for conspiracy under § 1983, a plaintiff must allege (1) the defendants reached an understanding or agreement that they would deny the plaintiff of one of his constitutional rights, and (2) the conspiracy resulted in an actual denial of one of his constitutional rights.[79] The claimant must state specific facts, not merely conclusory

---

[75] *Kalina*, 522 U.S. at 126. *See also Genzler v. Longanbach*, 410 F.3d 630, 638–39 (9th Cir. 2005).
[76] *Cousin v. Small*, 325 F.3d 627, 633 (5th Cir. 2003) (quoting *Buckley*, 509 U.S. at 274).
[77] R. Doc. 71 at ¶ 248.
[78] *Id.* at ¶ 251.
[79] *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015); *Carr v. Montgomery County, Tex.*, 59 F. Supp. 3d 787, 805 (S.D. Tex. 2014); *DiLosa v. City of Kenner*, No. 03-0310, 2004 WL 2984342, at *16 (E.D. La. Dec. 16, 2004).

allegations[80]; "[p]laintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based."[81]

Bodenheimer argues the amended complaint fails to allege an agreement among the defendants.[82] As a result, Bodenheimer argues, the amended complaint does not give rise to a claim for conspiracy for which the Court can grant relief.[83]

Adams alleges the Orleans Parish DA's Office, including Bodenheimer, and the NOPD conducted a joint investigation of the Ulfers murder[84] and that Ursin and Ruiz, assigned to investigate the Seafood City burglary, were working with both the NOPD and the DA's Office, including Bodenheimer.[85] Adams further alleges Bodenheimer conspired with the NOPD Defendants in the investigation of Adams, including fabricating probable cause and eliciting a coerced and false confession.[86] After Adams' conviction was reversed, Adams alleges, Defendants Bodenheimer, Venezia, Ruiz, and Gebbia had knowledge of but concealed exculpatory evidence from the prosecutors assigned to the second Ulfers murder trial in 1990.[87] Adams has sufficiently alleged operative facts in the amended complaint to give rise to a reasonable inference that Bodenheimer conspired with the other defendants to deprive Adams of his due process rights and right to a fair trial.[88]

---

[80] *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986) (citations omitted) (internal quotation marks omitted).
[81] *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991).
[82] R. Doc. 74-1 at 9.
[83] *Id.* at 10.
[84] *See, e.g.,* R. Doc. 71 at ¶¶ 36–53.
[85] *Id.* at 30–31.
[86] *Id.* at ¶ 244.
[87] *See, e.g.,* R. Doc. 71 at ¶¶ 148, 151–52,.
[88] *Meyer v. Foti*, 720 F. Supp. 1234, 1243 (E.D. La. 1989) (Parker, C.J.) ("To state a conspiracy claim under the civil rights statutes, plaintiff must plead 'operative facts' from which one may reasonably infer a prior illegal agreement." (quoting *Way v. Mueller Brass Co.*, 840 F.2d 303, 308 (5th Cir. 1988))). *See also Whisenant v. City of Haltom City*, 106 F. App'x 915, 917 (5th Cir. 2004) (per curiam); *Washington v. State of La. Dep't of Public Safety & Corrections*, No. 04-2314, 2005 WL 711598, (E.D. La. Mar. 22, 2005) (Barbier, J.).

Bodenheimer argues he is entitled to absolute immunity, but when the "underlying activity at issue is covered by absolute immunity, the 'plaintiff derives no benefit from alleging a conspiracy.'"[89] The Court, however, has already determined that the underlying conduct, regarding manufactured evidence and suppression of evidence from the prosecutors assigned to the second Ulfers trial, is not protected by absolute immunity. Accordingly, Bodenheimer is not entitled to absolute immunity on Adams' claim that Bodenheimer conspired to commit such conduct. The motion to dismiss Count 5 is denied.

II.     State-Law Claims

In *Knapper v. Connick*, the Louisiana Supreme Court recognized that "prosecutors are entitled to absolute immunity for conduct within the course and scope of their prosecutorial functions."[90] Absolute immunity is granted "only in those instances where the function being served is advanced by the extension of immunity."[91] Therefore, Louisiana courts employ a functional analysis to determine whether the prosecutor is entitled to absolute immunity with respect to the alleged misconduct giving rise to a cause of action.[92]

---

[89] *Smith v. City of New Orleans, Dep't of Police*, No. 95-0821, 1996 WL 39424, at *3 (E.D. La. Jan. 30, 1996) (Vance, J.) (quoting *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995)); *see also Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985) ("It is a well established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity.").
[90] *Knapper v. Connick*, 96-0434 (La. 10/15/96), 681 So. 2d 944, 950.
[91] *Id.*
[92] *Id.*

A. Count 9: *Malicious Prosecution*

Bodenheimer argues he is entitled to absolute immunity on Adams' state-law claim for malicious prosecution because the allegations pertain only to prosecutorial functions.[93]

To prevail on a claim for malicious prosecution under Louisiana law, the plaintiff must establish each of the following elements: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against a plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff."[94]

The Louisiana Supreme Court noted in *Knapper* that the "prevailing view" among courts is that "prosecutors are entitled to absolute immunity from suit for malicious prosecution when acting within the scope of their traditional prosecutorial duties."[95] "The Restatement (Second) Of Torts § 656 (1970) likewise provides that a 'public prosecutor acting in his official capacity is absolutely privileged to initiate, institute, or continue criminal proceedings.'"[96] In *Knapper*, the Louisiana Supreme Court held that "a prosecutor acting within the scope of his prosecutorial duties as an advocate for the state is entitled to absolute immunity from suit for malicious prosecution as a consequence of

---

[93] R. Doc. 74-1 at 10–11.
[94] *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 452 (La. 1987).
[95] *Knapper*, 681 So. 2d at 947.
[96] *Id. See also Miller v. Desoto Reg'l Health Sys.*, 2013-639 (La. App. 3 Cir. 12/11/13), 128 So. 3d 649, 659, *writ denied sub nom. Miller v. Desot Reg'l Health Sys.*, 2014-0294 (La. 4/11/14), 138 So. 3d 609.

14

conduct intimately associated with the judicial phase of the criminal process."[97] The Louisiana Supreme Court relied on the reasoning of the United States Supreme Court in *Imbler v. Pachtman*[98]: "Although the [United States] Supreme Court [in *Imbler*] acknowledged that there may be cases where prosecutorial misconduct can be proven to have been intentional and malicious, nevertheless the disadvantages that would result from any lesser form of immunity would be so substantial that absolute immunity is warranted even in cases where there is evidence of malice."[99]

Adams alleges Bodenheimer "maliciously prosecuted Mr. Adams for the murder of Cathy Ulfers despite knowing that the case was based around an erroneous and demonstrably false confession and despite having in his possession exculpatory evidence that cast doubt on Mr. Adams's confession and undermined any probable cause for such a proceeding."[100] Adams alleges Bodenheimer "furthered this malicious and wrongful prosecution by eliciting false and perjured testimony and suppressing exculpatory material from Mr. Adams's counsel."[101] Adams' allegations in support of his claim for malicious prosecution clearly involve actions of Bodenheimer that are "intimately associated with the judicial phase of the criminal process."[102] Accordingly, Bodenheimer is entitled to absolute immunity on Adams' state-law claim for malicious prosecution and the motion to dismiss Count 9 is granted.

    B.  Count 10: *Intentional or Negligent Infliction of Emotional Distress*

---

[97] *Id.* at 951.
[98] 424 U.S. 409, 430 (1976).
[99] *Knapper*, 681 So. 2d at 948.
[100] R. Doc. 71 at ¶ 289.
[101] *Id.* at ¶ 290.
[102] *Id.* at 951.

Adams asserts a cause of action against Bodenheimer for intentional infliction of emotional distress and/or negligent infliction of emotional distress.[103]

Adams alleges Bodenheimer "intentionally, maliciously, and with reckless disregard and deliberate indifference to Mr. Adams's rights engage[d] in extreme and outrageous conduct in connection with the investigation and prosecution of Mr. Adams."[104] Adams further alleges that Bodenheimer's conduct was unlawful, extreme, and outrageous and that Bodenheimer intended to, and did, inflict severe emotional distress on Adams.[105]

Prosecutors are entitled to absolute immunity on a claim for intentional or negligent infliction of emotional distress to the extent it is predicated on acts shielded by absolute immunity.[106] Adams alleges that Bodenheimer engaged in extreme and outrageous conduct during the prosecution of Adams, for example, by presenting false and misleading arguments and evidence to courts and juries.[107] Nevertheless, Adams also alleges Bodenheimer engaged in extreme and outrageous conduct in his investigatory role. Adams' claim for intentional or negligent infliction of emotional distress is predicated at least in part on Bodenheimer's alleged suppression of exculpatory evidence when the prosecutors on the 1990 Ulfers murder trial consulted with Bodenheimer and

---

[103] R. Doc. 71 at ¶¶ 295–300.
[104] R. Doc. 71 at ¶ 296.
[105] *Id.* ¶¶ 297–99.
[106] *See, e.g., Cousin*, 2001 WL 617455, at *9 ("The Court also dismisses plaintiff's claims for intentional infliction of emotional distress because it is predicated on acts shielded by absolute immunity."); *Livermore v. Arnold*, No. 10-507, 2011 WL 693569, at *8 (M.D. La. Jan. 20, 2011), *report and recommendation adopted*, 2011 WL 691865 (M.D. La. Feb. 15, 2011) (Noland, M.J.) ("Louisiana state courts have routinely recognized the reasoning in Imbler and have granted absolute immunity to prosecutors, who are acting within the scope of their prosecutorial duties as advocates for the State, from state law claims arising "as a consequence of conduct intimately associated with the judicial phase of the criminal process."); *Johnson v. Louisiana*, No. 09-55, 2010 WL 996475, at *14 (W.D. La. Mar. 16, 2010) (Hicks, J.) (same).
[107] R. Doc. 71 at ¶ 296.

16

on Bodenheimer's alleged fabrication of probable cause.[108] As discussed *supra*, Bodenheimer is not entitled to absolute immunity based on these alleged actions.[109] Accordingly, Bodenheimer is not entitled to absolute immunity on the entirety of Adams' cause of action for intentional or negligent infliction of emotional distress. The motion to dismiss Count 10 is denied insofar as the allegations relate to Bodenheimer's investigation of the Ulfers murder and the alleged Brady violation in 1990. The motion to dismiss Count 10 is granted insofar as the allegations relate to Bodenheimer's prosecution of the Ulfers murder trial.

## CONCLUSION

For the foregoing reasons:

**IT IS ORDERED** that the motion to dismiss Counts 2, 4, and 5 is **DENIED**, as Bodenheimer is not entitled to absolute immunity on these counts.

**IT IS FURTHER ORDERED** that the motion to dismiss Count 9 is **GRANTED** and Count 9 is **DISMISSED WITH PREJUDICE**, as Bodenheimer is entitled to absolute immunity on this claim.[110]

**IT IS FURTHER ORDERED** that the motion to dismiss Count 10 is **GRANTED** insofar as the allegations relate to Bodenheimer's prosecution of the Ulfers murder trial, and **DENIED** insofar as the allegations relate to Bodenheimer's investigation of the Ulfers murder and the alleged Brady violation in 1990.

**New Orleans, Louisiana, this 12th day of August, 2016.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[108] *Id.* at ¶¶ 123–28, 221–31, 244, 249, 296.
[109] *See supra* Parts I.A, I.B.
[110] R. Doc. 71 at ¶¶ 287–94.