## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **REGINALD ADAMS,** | **CIVIL ACTION** |
|     **Plaintiff** | |
| | |
| **VERSUS** | **NO. 15-1543** |
| | |
| **CITY OF NEW ORLEANS, ET AL.,** | **SECTION: "E" (3)** |
|     **Defendants** | |

## ORDER AND REASONS

Before the Court are three motions to dismiss filed by Defendants Frank Ruiz, Jerry Ursin, and Martin Venezia, respectively.[1] For the reasons that follow, Defendants' motions are **DENIED**.

### BACKGROUND[2]

This case arises from the wrongful conviction and imprisonment of Plaintiff Reginald Adams for the murder of Cathy Ulfers.

On October 7, 1979, Cathy Ulfers, the wife of a former police officer with the New Orleans Police Department ("NOPD"), was shot seven times at her home.[3] Defendants Martin Venezia and Sam Gebbia, detectives with the New Orleans Police Department ("NOPD"), were assigned to investigate the Ulfers murder.[4] On August 4, 1980, Detective Venezia of the NOPD and Frank Ruiz, a detective employed by the NOPD and/or an investigator employed by or acting as agent of the Orleans Parish District Attorney's office, launched a "joint investigation" into the murder.[5]

---

[1] R. Doc. 76 (Ruiz); R. Doc. 77 (Ursin); R. Doc. 78 (Venezia).
[2] The following facts derive from Adams' amended complaint.
[3] R. Doc. 71 at ¶ 36.
[4] *Id.* at ¶ 37.
[5] R. Doc. 71 at ¶ 79.

On June 20, 1980, the Seafood City restaurant in New Orleans was robbed.[6] Defendants Frank Ruiz and Jerry Ursin, detectives employed by the NOPD and/or investigators employed by or acting as agent of the Orleans Parish District Attorney's office,[7] were assigned to investigate the burglary.[8] On July 31, 1980, Adams was arrested in connection with the Seafood City burglary.[9]

On September 19, 1980, Ursin, Ruiz, and Venezia questioned Adams "for several hours late into the evening of the 19th and into the early morning of the 20th" without Adams' counsel present.[10] Adams alleges that Detectives Venezia and Ruiz began asking Adams about the Seafood City burglary around 11:30 p.m. on September 19, 1980.[11] Around 1:00 a.m. on September 20, Detective Ruiz, in the presence of Detective Venezia, gave Adams at least two Valium pills.[12] The detectives then began questioning Adams about the Ulfers murder.[13] Although Adams said he knew nothing about the murder, Detective Venezia repeatedly suggested Adams was involved in the Ulfers murder.[14] At around 4:15 a.m. on September 20, 1980, Adams falsely confessed to murdering Cathy Ulfers.[15]

At approximately 6:00 a.m., Detectives Venezia, Ursin and Ruiz transported Adams to the Ulfers' home and, along the way, stopped and purchased beer and snacks which they shared with Adams.[16]

---

[6] *Id.* at ¶ 64.
[7] *Id.* at ¶¶ 30–31.
[8] *Id.*
[9] *Id.* at ¶ 77.
[10] *Id.* at ¶¶ 90–91.
[11] *Id.* at ¶ 92.
[12] *Id.* at ¶ 96.
[13] *Id.* at ¶ 97.
[14] *Id.* at ¶¶ 98–99.
[15] *Id.* at ¶ 102.
[16] *Id.* at ¶ 111.

Around 7:00 a.m., Detectives Venezia, Ursin and Ruiz questioned Adams in the parking lot of the Orleans Parish Prison and elicited a second false confession.[17]

On October 9, 1980, Adams was indicted for first-degree murder of Ulfers.[18] These charges were the result of a year-long joint investigation by the NOPD, the Orleans Parish Sheriff's Office and the District Attorney's office.[19] The District Attorney's Office is defined in the allegations as including Bodenheimer.[20] After a jury trial, prosecuted by Bodenheimer and Harold Gilbert, assistant district attorneys in Orleans Parish,[21] Adams was convicted for the murder of Cathy Ulfers in 1983.[22] The Louisiana Supreme Court reversed that conviction in 1989.[23]

In 1990, the Orleans Parish DA's office retried Adams for second-degree murder of Cathy Ulfers, but Bodenheimer did not prosecute the case, as he was no longer working for the Orleans Parish DA's Office.[24]

The prosecutors in the 1990 retrial, Dan Rowan and Darryl Roberts, were not aware of the exculpatory evidence.[25] The exculpatory evidence was known to Bodenheimer and Detectives Venezia, Gebbia, Ruiz and Ursin.[26] Prior to the 1990 trial, Rowan and Roberts consulted with Bodenheimer, who failed to inform the new prosecutors of the exculpatory evidence,[27] in particular the first supplemental police report which was in the Seafood City burglary trial but not in the Cathy Ulfers murder file.

---

[17] *Id.* at ¶ 116-117.
[18] *Id.* at ¶ 120.
[19] *Id.* at ¶119.
[20] *Id.* at ¶ 16.
[21] *Id.* at ¶ 15.
[22] *Id.* at ¶ 139.
[23] *State v. Adams*, 550 So. 2d 595 (La. 1989).
[24] R. Doc. 71 at ¶¶ 33, 222, 228.
[25] *Id.* at ¶ 150.
[26] *Id.* at ¶ 145-147.
[27] *Id.* at ¶ 151.

Adams was again convicted in July 1990 and sentenced to life without parole.[28] The second conviction was affirmed on appeal in 1992, and the Louisiana Supreme Court denied Adams' writ in 1994.[29]

Adams was exonerated in 2014.[30] Following Mr. Adams's release, the DA's Office issued a press release stating that Defendant Bodenheimer and Assistant District Attorney Gilbert "were fully aware of the additional suspects as well as the recovery of the murder weapon and other physical evidence and that their handling of the case amounts to intentional prosecutorial misconduct."[31] On May 5, 2015, Adams filed this suit against Venezia, Gebbia, Ruiz, Ursin, and Bodenheimer in their individual capacities; current Orleans Parish District Attorney Leon Cannizzaro, Jr. in his official capacity; and the City of New Orleans.[32]

On December 14, 2015, Ruiz, Ursin, and Venezia (collectively, "Movants") filed motions to dismiss, arguing they are entitled to qualified immunity with respect to each cause of action asserted against them.[33] Adams filed a response in opposition on January 15, 2016.[34] The Court held oral argument on February 26, 2016.[35]

## STANDARD OF LAW

When deciding a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[36] The Court may consider only the pleadings, the documents attached to or incorporated by reference in the

---

[28] *Id.* at ¶ 149.
[29] *Id.*
[30] *Id.* at ¶ 84.
[31] *Id.* at ¶ 19.
[32] R. Doc. 1. Adams filed an amended complaint on November 12, 2015. R. Doc. 71.
[33] R. Doc. 76 (Ruiz); R. Doc. 77 (Ursin); R. Doc. 78 (Venezia).
[34] R. Doc. 85.
[35] *See* R. Doc. 97.
[36] *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935, 188 (2014).

plaintiff's complaint, the facts of which judicial notice may be taken, matters of public record,[37] and documents attached to a motion to dismiss "when the documents are referred to in the pleadings and are central to a plaintiff's claims."[38] If the Court accepts materials outside of the pleadings that do not fit within these parameters, the Court must treat the Rule 12(b)(6) motion as a motion for summary judgment pursuant to Rule 56.[39]

For the complaint to survive a motion to dismiss, the facts taken as true must state a claim that is plausible on its face.[40] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[42] A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action."[43] The Court cannot grant a motion to dismiss under Rule 12(b)(6) "unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint."[44]

## ANALYSIS

Adams sues Venezia, Ruiz, and Ursin in their individual capacities[45] and brings the following claims against them:

1.   Count 1: *Brady* violation under § 1983 against Venezia and Ruiz;

---

[37] *See U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[38] *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).
[39] FED. R. CIV. P. 12(d).
[40] *Brand*, 748 F.3d at 637–38.
[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[42] *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted).
[43] *Whitley*, 726 F.3d at 638 (citation omitted) (internal quotation marks omitted).
[44] *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).
[45] R. Doc. 71 at ¶¶ 29, 31, 32.

2.   Count 3: Coerced confession and manufactured evidence under § 1983 against Venezia, Ruiz, and Ursin;

3.   Count 5: Conspiracy under § 1983 against Venezia, Ruiz, and Ursin; and

4.   Count 10: Intentional infliction and/or negligent infliction of emotional distress under state law against Venezia, Ruiz, and Ursin.[46]

Movants argue they are entitled to qualified immunity on all of Adams' claims against them.[47]

I.   Counts 1, 3, and 5: *Brady*, Manufactured Evidence and Coerced Confession, and Conspiracy

Adams' causes of action for Movants' alleged *Brady* violation, manufactured evidence and coerced confession, and conspiracy arise under 42 U.S.C. § 1983.

To state a claim under 42 U.S.C. § 1983, "a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law."[48]

The qualified immunity defense serves to shield government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[49] When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[50] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant

---

[46] R. Doc. 71.
[47] R. Docs. 76, 77, 78.
[48] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).
[49] *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004).
[50] <u>Backe v. LeBlanc</u>, 691 F.3d 645, 648 (5th Cir. 2012); *Jordan v. City of New Orleans*, No. 15-1922, 2016 WL 633666, at *2 (E.D. La. Feb. 17, 2016).

is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[51]

When evaluating a claim of qualified immunity, the Court must determine whether the facts alleged show the officer's conduct violated a constitutional right and whether the officer was acting under color of state law at the time of the alleged incident.[52] If there is a constitutional violation and state action, the Court must then determine whether the right was clearly established in light of the specific context of the case.[53] For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[54] Whether the right was clearly established at the time the defendant acted "requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident."[55]

A.   "Under Color of State Law"

To state a claim under 42 U.S.C. § 1983, the plaintiff must show the alleged violation of the Constitution or of federal law was committed by someone acting under color of state law.[56] As a threshold matter, the Court addresses whether Movants were acting under color of state law during the incident.[57]

---

[51] *Backe*, 691 F.3d at 648. *See also Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994) ("To survive a motion to dismiss in cases where the qualified immunity defense is raised, a plaintiff must state facts, which if proven, would defeat the defense."); *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir. 1992).

[52] *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).

[53] *Id.*

[54] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[55] *Kinney*, 367 F.3d at 350 (quoting *Conroe Creosoting Co. v. Montgomery County*, 249 F.3d 337, 340 (5th Cir. 2001)).

[56] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[57] Movants do not dispute that they were acting under color of state law at the time of the incident. *See* R. Docs. 76, 77, and 78.

Whether an officer acted under color of state law depends on (1) whether the officer misused or abused his official power, and (2) whether there is a nexus between the victim, the improper conduct, and the officer's performance of official duties.[58] "If an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law."[59] However, "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity."[60]

Adams alleges Venezia "was at all relevant times a detective employed by the NOPD" and that he and Gebbia "were the lead detectives assigned to investigate the murder of Cathy Ulfers."[61] Adams alleges Ruiz and Ursin were "at all relevant times . . . detective[s] employed by the NOPD and/or . . . investigator[s] employed by or acting as . . . agent[s] of the DA's Office" and that they "were the lead investigators for the DA's Office assigned to the June 1980 burglary of Seafood City."[62] The allegations against them in the amended complaint all pertain to their role as detectives or investigators in the burglary or murder.[63] The officers clearly were acting under color of state law.

---

[58] *Id.* at 464–65; *Townsend v. Moya*, 291 F.3d 859, 865 (5th Cir. 2002).
[59] *Bustos*, 599 F.3d at 465.
[60] *United States v. Causey*, 185 F.3d 407, 414 (5th Cir. 1999) (quoting *Griffin v. Maryland*, 378 U.S. 130, (1964)).
[61] R. Doc. 71 at ¶¶ 29, 30.
[62] *Id.* at ¶¶ 31, 32.
[63] *See generally* R. Doc. 71.

B. <u>Violations of Constitutional or Federal Law</u>

  *1.  Count 1:* Brady *Claim against Venezia and Ruiz*

  a.  Violation of a Constitutional Right to Due Process

Adams brings a *Brady* claim against Venezia and Ruiz.[64] Under *Brady*, a state actor "deprives a criminal defendant of his right to due process when [the state actor] suppresses or withholds evidence that is both favorable to the defendant and material to his defense."[65] Evidence is material if prejudice ensued as a result of its non-disclosure.[66]

Adams alleges there were two supplemental police reports containing exculpatory information that were never disclosed to the defense.[67] The first supplemental report, authored by Venezia, detailed the investigation of the Ulfers murder and was located in the DA's office file for the Seafood City burglary, and not in the Ulfers murder file.[68] The first supplemental report had information about the murder weapon that was recovered from an individual with no connection to Adams.[69] It also contained information regarding the fact that the property allegedly stolen from the Ulfers home on the day of the murder was recovered by police from two individuals with no connection to Adams.[70] Adams alleges Venezia and Ruiz were aware of the exculpatory information contained in the first supplemental report but did not disclose it to Adams or his counsel.[71] The second supplemental report, authored by Venezia, also contained exculpatory information regarding the investigation. For example, the second supplemental report explained that

---

[64] R. Doc. 71 at ¶¶ 214–20.
[65] *Truvia v. Connick*, 577 F. App'x 317, 321–22 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1550, 191 L. Ed. 2d 637 (2015) (citing *Smith v. Cain*, 132 S. Ct. 627, 630 (2012)).
[66] *Banks v. Dretke*, 540 U.S. 668, 691 (2004).
[67] R. Doc. 71 at ¶ 123–28.
[68] *Id.* at ¶ 124.
[69] *Id.* at ¶¶ 40–46, 123.
[70] *Id.* at ¶¶ 39, 54–62, 123.
[71] *Id.* at ¶ 124. Adams also alleges Ursin knew of the exculpatory information but did not bring this *Brady* claim against Ursin. *See* R. Doc. 71 at ¶¶ 214–20.

Adams' fingerprints did not match those collected on the night of the murder.[72] Copies of the second supplemental report were located in the DA's Office files for both the Seafood City burglary and the Ulfers murder.[73] Adams alleges Movants knew of the second supplemental report and the exculpatory information contained therein but deliberately withheld the report from Adams and his counsel.[74]

Moreover, Adams alleges Movants had knowledge of additional exculpatory evidence but never disclosed it to Adams' counsel.[75] For example, Adams alleges Movants knew of evidence implicating Cathy Ulfers' husband in her murder, information tracing the gun connected to the crime to individuals with no connection to Adams, and ballistics testing confirming that the gun was the weapon used in the murder.[76]

The evidence allegedly withheld from Adams and his counsel was clearly favorable to Adams, as it implicated another suspect in the murder and demonstrated the weakness in the connection between evidence of the crime and Adams. Considering the well-pleaded allegations of the complaint, the Court finds Movants withheld evidence that was both favorable to Adams and material to his defense, and thus Adams has sufficiently pleaded a claim for a *Brady* violation of his constitutional right to due process.

### b.  Clearly Established

Concealing exculpatory evidence was a clearly established constitutional violation at the time of the investigation and Adams' first and second murder trials.[77] Taking the

---

[72] *Id.* at ¶ 127.
[73] *Id.* at ¶ 128.
[74] *Id.*
[75] *Id.* at ¶¶ 131–153.
[76] *Id.* at ¶¶ 142, 147, 148.
[77] *See Brown v. Miller*, 519 F.3d 231, 238 (5th Cir. 2008) ("A police officer's deliberate concealment of exculpatory evidence violates this same right, and can give rise to liability under § 1983. By 1967, a public official's concealment of exculpatory evidence was a constitutional violation in this circuit."); *Burge v. Par. of St. Tammany*, 187 F.3d 452, 480 n.11 (5th Cir. 1999) ("Twenty-one years before *Geter* [*v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988)], this court declared that suborning perjury and concealing exculpatory

well-pleaded allegations of the complaint as true, the Court finds that an objectively reasonable officer would have realized that the evidence withheld from the defense was favorable to Adams and material to his defense. Accordingly, Movants are not entitled to qualified immunity on Adams' *Brady* claim under § 1983, and the motion to dismiss Count 1 is denied.

### 2. Count 3: *Manufactured Evidence and Coerced Confession against Venezia, Ruiz, and Ursin*

#### a. Violation of a Constitutional Right to Due Process and a Fair Trial

"[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."[78] Indeed, "'framing' someone for a crime that he did not commit deprives that person of his constitutional rights."[79] Further, courts recognize that a coerced false confession may provide the basis for a claim under § 1983 if there is a reasonable likelihood that, without the use of the confession, the defendant would not have been convicted.[80]

Adams alleges Movants coerced the false confession of Adams.[81] Adams alleges that, after Adams was arrested for the burglary of Seafood City, on September 19, 1980, Ursin, Ruiz, and Venezia questioned Adams "for several hours late into the evening of the 19th and into the early morning of the 20th" without Adams' counsel present.[82] Adams alleges that Detectives Venezia and Ruiz began asking Adams about the Seafood City burglary around 11:30 p.m.[83] Ursin was "in and out of the room over the course of the

---

evidence by police officers were constitutional violations." (citing *Luna v. Beto*, 391 F.2d 329, 332 (5th Cir.1967)).

[78] *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997).

[79] *Young v. Biggers*, 938 F.2d 565, 570 (5th Cir. 1991).

[80] *See, e.g., Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014).

[81] *See* R. Doc. 71 at ¶¶ 85–118.

[82] *Id.* at ¶¶ 90–91.

[83] *Id.* at ¶ 92.

evening."[84] The detectives "made threats against [Adams] and his family."[85] Around 1:00 a.m. on September 20, Detective Ruiz gave Adams at least two Valium pills.[86] The detectives then began questioning Adams about the Ulfers murder.[87] Although Adams said he knew nothing about the murder, Detective Venezia threatened Adams and repeatedly suggested Adams was involved in the Ulfers murder, feeding him details about the crime.[88] For example, Adams alleges, Venezia told Adams that the victim was related to an NOPD officer, described the location of the crime, and told Adams that the victim had been shot.[89] At around 4:00 a.m. on September 20, 1980, Adams falsely confessed to murdering Cathy Ulfers.[90] Adams alleges the false confession contained numerous inaccuracies.[91]

Adams alleges Movants then "sought to manufacture additional evidence to bolster the credibility of Mr. Adams's obviously false confession."[92] At 6:00 a.m., Venezia, Ursin, Ruiz, and another officer allegedly took Adams to the Ulfers home.[93] Adams alleges Ursin drove to the home and, on the way, stopped to purchase beer and snacks, which they shared with Adams.[94] Movants walked Adams through the Ulfers home and provided him with details about the murder while there.[95] Afterward, around 7:00 a.m., Movants took Adams back to the Orleans Parish Prison, where they questioned him further.[96] Adams

---

[84] *Id.*
[85] *Id.* at ¶ 7.
[86] *Id.* at ¶ 96.
[87] *Id.* at ¶ 97.
[88] *Id.* at ¶¶ 98–99.
[89] *Id.* at ¶ 100.
[90] *Id.* at ¶ 102.
[91] *See id.* at ¶ 130.
[92] *Id.* at ¶ 110.
[93] *Id.* at ¶ 111.
[94] *Id.*
[95] *Id.* at ¶ 115.
[96] *Id.* at ¶ 116.

alleges Venezia, Ursin, and Ruiz "continued to prod Mr. Adams about his involvement in the Ulfers murder and suggest facts for Mr. Adams to incorporate into his statements."[97]

Adams alleges that, as a direct result of the manufactured evidence, Adams was falsely tried and convicted of murder and served nearly 34 years in prison for a crime he did not commit, and Movants' actions deprived Adams of his right to due process and a fair trial.[98] Adams has sufficiently alleged that Movants manufactured evidence, coerced Adams' confession, and, as a result, violated Adams' constitutional rights.

### b.  Clearly Established

"[T]he right of criminal defendants to be free from false or fabricated evidence was well settled by 1959 or earlier."[99] It is clear in this case that Movants' alleged conduct violated Adams' clearly established constitutional rights by coercing his confession and manufacturing evidence.

"Under the Fifth Amendment's privilege against self-incrimination, when a person confesses in custodial interrogation, courts determine whether such a suspect's confession is coerced or involuntary by examining the totality of the circumstances surrounding the . . . interrogation."[100] Factors such as the length of the interrogation, the conduct of the officers, including making threats to the defendant, the defendant's mental state, and the presence of counsel are relevant to determining whether a confession is coerced.[101] Moreover, as the Seventh Circuit explained in *United States v. Villalpando*,

---

[97] *Id.* at ¶ 117.
[98] *Id.* at ¶ 237.
[99] *Brown v. Miller*, 519 F.3d at 237.
[100] *Edmonds v. Oktibbeha Cty., Miss.*, 675 F.3d 911, 914 (5th Cir. 2012) (alteration in original) (internal quotation marks omitted).
[101] *See, e.g., Spano v. New York*, 360 U.S. 315, 322 (finding a confession involuntary, in part because "the questioning [was not] conducted during normal business hours, but began in early evening, continued into the night, and did not bear fruition until the not-too-early morning); *Rogers v. Richmond*, 365 U.S. 534, 542 (1961) (concluding the petitioner's confession was not given voluntarily when the interrogating officers threatened to bring the petitioner's wife in for questioning); *United States av. Kreczmer*, 636 F.2d 108, 111

"[p]olice conduct that influences a rational person who is innocent to view a false confession as more beneficial than being honest is necessarily coercive, because of the way it realigns a suspect's incentives during interrogation."[102]

The totality of the circumstances, as alleged by Adams, including those surrounding the first false confession, those surrounding the second false confession, the length of the interrogation, the officers' providing Adams with Valium pills and alcohol, threats made by the officers, the absence of Adams' counsel, and the officers' taking Adams to the crime scene in the middle of the night demonstrate that Movants coerced Adams' confession. Adams sufficiently alleges Movants also manufactured evidence to bolster the false confessions. "A reasonable person . . . surely would realize that 'framing' someone for a crime that he did not commit deprives that person of his constitutional right."[103] Accordingly, Movants are not entitled to qualified immunity on Adams' § 1983 claim that Movants manufactured evidence and coerced Adams' false confessions, and the motion to dismiss Count 3 is denied.

### 3.   *Count 5: Conspiracy against Venezia, Ruiz, and Ursin*

Adams alleges Venezia, Ruiz, and Ursin conspired among themselves and with Gebbia, Bodenheimer, and others "to intentionally, maliciously, and, with reckless disregard and deliberate indifference, violate Mr. Adams's right to due process and a fair trial."[104] Adams lists several overt acts the defendants committed in furtherance of the

---

(5th Cir. 1981) ("A confession is involuntary if the defendant is so intoxicated by alcohol or other drugs that the confession is not rationally given."); *Grant v. Wainwright*, 496 F.2d 1043, 1047 (5th Cir. 1974) (considering that the "intensive interrogation" lasted seven and a half hours and concluding that the totality of the circumstances demonstrated the confession was involuntary); *Holman v. Washington*, 364 F.2d 618, 621 (5th Cir. 1966) ("[I]nterrogation without the presence of counsel may be considered as one factor (among many others) tending to prove involuntariness.").

[102] *United States v. Villalpando*, 588 F.3d 1124, 1128 (7th Cir. 2009).
[103] *Young*, 938 F.2d at 570.
[104] R. Doc. 71 at ¶ 248.

alleged conspiracy, including ignoring suspects and choosing to focus the investigation on Adams despite the lack of evidence linking him to the Ulfers murder.[105]

To state a claim for conspiracy under § 1983, a plaintiff must allege (1) the defendants reached an understanding or agreement that they would deny the plaintiff of one of his constitutional rights, and (2) the conspiracy resulted in an actual denial of one of his constitutional rights.[106] The claimant must state specific facts, not merely conclusory allegations[107]; "[p]laintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based."[108]

Specifically, Adams alleges the defendants "conspired to violate Mr. Adams's rights by coercing his confession and manufacturing evidence against him to secure probable cause for an arrest and thereafter a conviction for the murder of Cathy Ulfers."[109] Adams also alleges that, as part of their conspiracy, Venezia, Ruiz, and Gebbia "knowingly and intentionally did not disclose [exculpatory] evidence to the prosecutors who tried Mr. Adams for murder in 1990."[110] Therefore, in essence, Adams alleges Movants conspired to manufacture evidence against Adams, coerce a false confession from Adams, and withhold exculpatory evidence from Adams and his counsel.

"Defendants are entitled to qualified immunity from the § 1983 conspiracy claim if they are entitled to qualified immunity from the underlying § 1983 claims."[111] The Court has already determined that Movants are not entitled to qualified immunity with respect

---

[105] *Id.* at ¶ 251.

[106] *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015); *Carr v. Montgomery County, Tex.*, 59 F. Supp. 3d 787, 805 (S.D. Tex. 2014); *DiLosa v. City of Kenner*, No. 03-0310, 2004 WL 2984342, at *16 (E.D. La. Dec. 16, 2004).

[107] *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986) (citations omitted) (internal quotation marks omitted).

[108] *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991).

[109] R. Doc. 71 at ¶ 249.

[110] *Id.* at ¶ 251.

[111] *Hill v. City of Seven Points*, 31 F. App'x 835 (5th Cir. 2002).

to the acts underlying Adams' conspiracy claim. Moreover, a cause of action for conspiracy to deprive a person of his constitutional rights was clearly established before the officers allegedly conspired to deprive Adams of his rights.[112] Accordingly, Movants are not entitled to qualified immunity on Adams' conspiracy claim, and the motion to dismiss Count 5 is denied.

## II.  Count 10: Intentional or Negligent Infliction of Emotional Distress against Venezia, Ruiz, and Ursin

Adams alleges a cause of action against Movants for intentional or negligent infliction of emotional distress under Louisiana law.[113]

"Louisiana law does not recognize an independent tort of negligent infliction of emotional distress."[114] Under Louisiana law, recovery for mental distress may only be based on a breach of contract or a separate tort.[115] Furthermore, Adams did not allege negligent infliction of emotional distress with respect to a physical injury or illness. In Louisiana, there is no liability for mental disturbance caused by negligence without bodily injury, illness, or other physical consequences.[116] Therefore, Adams has a claim only for intentional infliction of emotional distress.

To recover for intentional infliction of emotional distress, a plaintiff must establish three elements: "'(1) that the conduct of the defendant was extreme and outrageous;

---

[112] *See Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir. 1983) ("[W]e have previously held that 'if state officers conspire . . . in such a way as to defeat or prejudice a litigant's rights in state court, that would amount to a denial of equal protection of the laws by persons acting under color of state law.'" (quoting *Dinwiddie v. Brown*, 230 F.2d 465, 469 (5th Cir.), *cert. denied*, 351 U.S. 971 (1956)). *See also Doe v. Dantin*, No. 11-467, 2014 WL 2045344, at *6 (E.D. La. May 16, 2014) (Zainey, J.).

[113] R. Doc. 71 at ¶¶ 295–300.

[114] *Landrum v. Bd. of Comm'rs of the Orleans Levee Dist.*, 95-1591 (La. App. 4 Cir. 11/27/96), 685 So. 2d 382, 390 (citing *Moresi v. Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1095–96 (La. 1990)).

[115] *Moresi*, 567 So. 2d at 1095.

[116] *Id.* ("[I]f the defendant's conduct is merely negligent and causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance.").

(2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'"[117]

The alleged conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[118] The conduct may arise from an abuse by the actor of a position that "gives him actual or apparent authority over the other, or power to affect his interests."[119] It must be intended or calculated to cause severe emotional distress; "some lesser degree of fright, humiliation, embarrassment, worry, or the like" is insufficient.[120] "The distress suffered must be such that no reasonable person could be expected to endure it."[121] As the Fifth Circuit has explained, "Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury."[122]

Adams alleges Movants "intentionally, maliciously, and with reckless disregard and deliberate indifference to Mr. Adams's rights engage[d] in extreme and outrageous conduct in connection with the investigation and prosecution of Mr. Adams, including concealing exculpatory evidence; manufacturing inculpatory evidence; and presenting false and misleading arguments and evidence to courts and juries."[123] Adams further

---

[117] *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1137 (5th Cir. 2014) (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)).
[118] *White*, 585 So. 2d at 1209.
[119] *Id.* at 1209–10.
[120] *Id.* at 1210.
[121] *Id.*
[122] *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 756–57 (5th Cir. 2001).
[123] R. Doc. 71 at ¶ 296.

17

alleges that Movants' conduct was unlawful, extreme, and outrageous and that they intended to, and did, inflict severe emotional distress on Adams.[124] As discussed above, Adams alleges that Movants coerced Adams' confession, in part by interrogating him in the middle of the night for at least seven and a half hours, without his attorney present, and gave Adams Valium pills and alcohol. Adams further alleges the officers perjured themselves and concealed evidence from Adams and his counsel, in furtherance of a conspiracy to secure probable cause for an arrest of and a conviction against Adams for the murder of Cathy Ulfers. Adams has sufficiently alleged that Movants engaged in extreme and outrageous conduct. Adams also sufficiently alleges Movants intentionally engaged in this conduct in order to secure his arrest and conviction. Taking the allegations as true, Movants' conduct was atrocious and intolerable. The Restatement (Second) of Torts states, "In particular police officers . . . have been held liable for extreme abuse of their position."[125]  It is clear that the emotional distress suffered by Adams as a result of Movants' conduct, namely his false murder conviction and false imprisonment for nearly 34 years, is sufficiently severe. Thus, Adams has sufficiently alleged a cause of action against Movants for intentional infliction of emotional distress.

"[Q]ualified immunity does not apply to Louisiana tort claims. Instead, Louisiana's discretionary immunity statute applies to those claims."[126] Louisiana's discretionary function immunity statute, La. R. S. 9:2798.1 provides that public entities or their officers

---

[124] *Id.* ¶¶ 297–99.

[125] RESTATEMENT (SECOND) OF TORTS § 46 (1965). The Louisiana Supreme Court has found that the state-law cause of action for intentional infliction of emotional distress is "generally in accord with the legal precepts set forth in the Restatement text and comments." *See White*, 585 So. 2d at 1209.

[126] *Randle v. Tregre*, 147 F. Supp. 3d 581, 593 (E.D. La. 2015) (Africk, J.); *Glaster v. City of Mansfield*, No. 14-627, 2015 WL 852412, at *10 (W.D. La. Feb. 26, 2015) (Foote, J.). *See also Doss v. Morris*, 86 F. App'x 25, 28–29 (5th Cir. 2004) (noting that there is no "right to qualified immunity for conduct that exposes an officer to liability under Louisiana tort law.").

or employees are immune from suit for discretionary acts performed within the course and scope of employment.[127] La. R.S. 9:2798.1, however, "does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions; i.e. decisions based on social, economic, or political concerns."[128]

Adams' state-law claim for infliction of emotional distress does not allege "conduct at the operational level," and Movants fail to offer evidence "'that their discretionary acts were grounded in social or public policy,' which is required in order to invoke La. R.S. 9:2798.1's protection."[129] Accordingly, Movants are not entitled to immunity on Adams' state-law claim for intentional and/or negligent infliction of emotional distress, and Movants' motion to dismiss Count 10 is denied.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Venezia's, Ursin's, and Ruiz's motions to dismiss are **DENIED**.[130]

**New Orleans, Louisiana, this 12th day of August, 2016.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[127] LA. REV. STAT. § 9:2798.1.
[128] *Lockett v. New Orleans City*, 639 F.Supp.2d 710, 745 (E.D. La. 2009) (Barbier, J.), aff'd, 607 F.3d 992 (5th Cir. 2010) (citing Saine v. City of Scott, 819 So.2d 496 (La.App. 3 Cir 2002)).
[129] *Randle*, 147 F. Supp. 3d at 594 (quoting *Turner v. Houma Mun. Fire*, No. 99-152, 2002 WL 1467876 at *6 (E.D. La. July 8, 2002) (Zainey, J.)).
[130] R. Docs. 76, 77, 78.