UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **REGINALD ADAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1543** |
| **CITY OF NEW ORLEANS, ET. AL.** | **SECTION "E" (3)** |

**ORDER**

Before the Court are three motions: (1) Motion to Quash Deposition of Subpoena for Michal Magner, Adams's Attorney of Record, or for a Protective Order [Doc. #194]; (2) Motion for Leave to File a Third Amended Complaint [Doc. #196]; and (3) Plaintiff's Motion to Compel Defendants to Provide Good-Faith Responses to Plaintiff's Court-Ordered Proposed Stipulations [Doc. #209]. The Court heard oral argument on all three motions and took the motions under advisement. Having reviewed the motions, the oppositions, and the case law, the Court rules as follows.

**I.      Background**

The factual background of this lawsuit has been outlined numerous times and need not be repeated here. *Adams v. City of New Orleans*, Civ. A. No. 15- 1543, 2016 WL 4275246 (E.D. La. Aug. 12, 2016).

**II.     The Motion to Quash**

Michael Magner is lead counsel for Adams in this lawsuit and also represented Adams in his post-conviction proceedings. Defendants informed Adams that they intended to question Magner as to his comments to the press and his participation and interaction with the attorney general's office and the Court. On March 8, 2017, the parties deposed Colin Clark, the assistant Attorney General ("AG") who signed the consent judgment stating that Adams is innocent. Adams contends that defendants could have asked Clark whatever they intend to seek from

Magner.

Adams argues that defendants had ample opportunity to obtain the information that they seek through less burdensome means and maintains that defendants could have asked Magner about his press statements – which already speak for themselves – through an interrogatory or request for admission. He also contends that defendants have not explained how the AG's investigation into the case is relevant or crucial to their defenses.

Citing case law, Adams argues that defendants must carry the burden here because they seek to depose his counsel. Adams contends that defendants have not met that burden.

Defendants note that Magner made comments to the press and to others that the Assistant District Attorneys ("ADAs") in Adams' case were rogue and intentionally hid evidence from Adams' attorneys. Defendants note that they do not intend to depose Magner as to his representation of Adams in this civil case. Defendants argue that they have no obligation to show Magner the press statements about which they intend to depose him.

Defendants contend that Magner was acting as a member of the Innocence Project ("IPNO"). They argue that there can be no claim of work-product or attorney-client privileges given that they seek to depose Magner as to statements made in public. Defendants maintain that no other means exist to obtain the information because any questions directed to third parties would be hearsay. The information is also relevant and non-privileged and crucial to the preparation of defendants' case. They maintain that if – as Magner alleged – the ADAs were rogue, then Cannizarro can not be held responsible, and Adams case against him fails.

Adams first notes that the deadline for fact depositions was March 10, 2017, and defendants failed to serve the subpoena on him until March 13, 2017. [Doc. #171].

Adams also contends that defendants fail to identify with specificity what they intend to ask Magner. While counsel originally stated that he wanted to question Magner in his capacity as Adams' counsel during post-conviction proceedings, he now maintains that he seeks to question him as a member of IPNO.

Under the factors outlined in the case law, Adams argues that deposing counsel is a last resort to obtaining relevant, non-privileged information. Defendants have failed to demonstrate that they have sought the information through other, less intrusive means. Adams also maintains that courts are reticent to order the deposition of opposing counsel when it may reveal the thought processes of the attorney. And, he notes, while public statements may not be privileged, their underlying preparation and related advice are protected. Adams maintains that defendants are in the best position to determine whether the conduct of their own counsel violated Adams' rights, not Magner: Whether counsel went rogue and failed to follow instructions would best be known by those on the inside.

Lastly, Adams asks for his fees and costs incurred in this discovery dispute as he gave defendants ample case law and arguments to save the Court and the parties from this dispute.

After the oral hearing, the Court took the motion under advisement and allowed the parties to submit letter correspondence to the Court in which they discuss in more detail the proposed topics on which to depose Magner. The parties did so, and the Court has reviewed the correspondence.

An opposing party's counsel is not "absolutely immune from being deposed." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *see also Hall v. Louisiana*, No. Civ. A. 12-657-BAJ, 2014 WL 1652791, at *4 (M.D. La. Apr. 23, 2014) (same). However, courts should

only allow an opponent's counsel to be deposed in limited circumstances – *i.e.*, when the party seeking the deposition has shown that: (1) "no other means exist to obtain the information than to depose opposing counsel;" (2) "the information sought is relevant and nonprivileged"; and (3) "the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327. *Shelton* makes clear that the party asking to depose its opponent's counsel bears the burden of proof.

The Court does not find that defendants have met their burden here. They have not explained why no other, less intrusive means exist to obtain the information. Indeed, it appears from the record that defendants have not even attempted to obtain the information that they seek from any less, non-intrusive means. And it is still far from clear to the Court that the majority of the information that defendants seek is not privileged. The press statements speak for themselves, and any questions regarding their preparation and/or drafting would delve into privileged matters. In addition, questions concerning "[n]on-privileged [s]tatements regarding Reginald Adams case to members of OPDA and others" tread too closely to the line of privilege for the Court. Simply by saying "non-privileged" does not make it so. And the Court still does not understand how the information is crucial to the case. If, for example, Magner has underlying support that the ADA's went rogue, then he obtained it from defendants themselves, and they should already have it. Accordingly, the Court grants the motion.

**II.     The Motion to Amend**

Adams seeks to amend his complaint to assert a claim that a pervasive "code of silence" existed at the NOPD that caused officers to manipulate evidence that Ronald Ulfers had murdered his wife and that Adams had murdered her. Adams meticulously details the independent investigation that he performed to discover this evidence outside of the normal discovery process.

Adams maintains that he could not have timely amended his complaint because he was unaware of the code of silence on August 22, 2016, the deadline to amend. Citing case law, he argues that courts often allow a plaintiff to amend after that plaintiff's beliefs are corroborated by hard evidence. He notes that a code of silence is difficult to discern because – by its own name – nobody discusses it. He also contends that the lapse of time between his conviction and now has hampered his discovery efforts. Adams lists the evidence that he has discovered to support his beliefs. Adams also notes that the deadline to amend predated all depositions in this lawsuit, and several officers – when deposed – have admitted to the code of silence.

Adams also argues that the amendment is important because it adds new, material allegations. He contends that defendants are not prejudiced because evidence of the NOPD's customs, practices, and policies is and should always have been in their possession. He maintains that there is no discovery that defendants would need from him, and all other deadlines have not passed. Therefore, Adams argues, no continuance will be required.

Turning to Rule 15, Adams contends that there is no undue delay, bad faith, or dilatory motive for those reasons outlined above. He also maintains that the amendment is not futile, noting that the Fifth Circuit has held that when officers who have violated the code of silence are retaliated against, the code of silence is the direct and proximate cause.

In its opposition, the City[1] maintains that all of the facts related to Adams' new claim have been known to him since the outset of this litigation. It notes that on May 4, 2016, Adams produced correspondence to defendants that outlined the *Thomas* and *Hero* cases and the Algiers Seven incident. While Adams argues that he only recently learned of these cases, the

---

[1] While numerous defendants filed pleadings during this round of motion practice, the Court refers to them collectively as "defendants" or "the City" (whose pleadings most parties adopted).

correspondence proves that he knew of them well over a year ago.

The City also contends that Adams has consistently insinuated that a code of silence existed at the NOPD. Citing Adams' complaint, it notes that he alleged in his earlier complaints that the defendant police officers knew of evidence that Ronald Ulfers had murdered his wife Debra but had kept quiet about it. The City cites a slew of other allegations from Adams that imply that a code of silence existed at the NOPD.

Citing the "new" evidence on which Adams relies, the City contends that it is no less speculative than any of the other allegations that Adams has cited. It argues that much of the evidence was produced by Adams to defendants early on in the lawsuit. It maintains that the evidence that Adams now cites to support his claim actually does not support the new allegations.

The City also argues that the amendment is not important because it does not add to Adams' case in any significant manner. Adams has remaining theories of recovery, it contends, so dismissal of this one will not leave him "dead in the water," as required by case law. The City also argues that it will be prejudiced because it will have to bear the time and expense of re-deposing numerous witnesses. The failing health of one or more of these witnesses require that the trial go forward as scheduled, so no continuance can cure this prejudice.

The City argues that the new claim is a patent attempt to insert prejudicial testimony regarding police brutality and excessive force before the jury. This evidence does not relate to Adams' *Brady* claims in any way. The City maintains that Adams' amendment is also futile as it fails to meet the standards outlined in *Iqbal* and *Twombly*. Adams' allegation that the NOPD had an unofficial "code of silence" can not meet the Monell standards given that Adams must allege that it was an official policy or custom. The City maintains that Adams' attempt to support

his allegation with highly general reports and disparate instances of police brutality and excessive force that bear no similarity to his claims. It contends that Adams' allegations point only to other bad or unwise acts and do not support his claims of manufactured and suppressed evidence. Citing case law, the City argues that the Fifth Circuit requires that the amendment must describe similar instances specific to Adams' own constitutional deprivation.

The City also maintains that the amendment is futile because Adams must allege causation, i.e., that the specific instances of conduct led to Adams' own constitutional deprivations. However, the City notes that the evidence to which Adams now cites is wholly unrelated to Adams or his rights.

The City also asserts that Adams has failed to plead any actual or constructive knowledge on the part of city policymakers so as to impose liability under *Monell*. It notes that there were different chiefs of police by the time of Adams' two trials. The City suggests that Adams' procedural ambush indicates that he is acting in bad faith. It again relies on Adams' own production to contend that he knew about the evidence long before he filed the amendment. Adams had informed defendants of his intent to file the new claim on the day after the close of discovery, thereby precluding defendants from participating in any discovery as to the claim.

Defendants also point out that should the Court grant the motion, it should be contemplated that defendants will file another round of Rule 12(b)(6) motions, thereby necessitating a continuance of the trial and of all other deadlines.

Adams must satisfy the Rule 16 "good cause" test because the amendment deadline in the scheduling order passed before he filed the instant motion. *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). Federal Rule of Civil Procedure 16(b)

governs amendment of pleadings after a scheduling order's deadline to amend has expired. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

Rule 16(b) provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). It requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 535 (internal citations omitted). Four factors are relevant to good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S & W Enters.*, 315 F.3d at 536). If the party meets the good-cause standard, the deadline can be extended, and the more liberal standard of Rule 15(a) will then apply to the request for leave to amend. *Tex. Indigenous Council v. Simpkins*, 544 F. App'x 418, 420 (5th Cir. 2013)

The Court finds that Adams only recently learned of the depths of the alleged code of silence through discovery. While defendants point to exhibits to their motion to support their argument that Adams knew of his claims more than a year ago, the Court finds that the documents do not reference the specific facts on which Adams relies here. For example, Exhibit A to their opposition appears to be a production log that does not reference specific documents [Doc. #207-1], and Exhibit B is a discussion of the New Orleans Police Department Consent Decree, which neither references the *Thomas* or *Hero* cases, nor the Algiers Seven incident. [Doc. #207-2].

Notwithstanding this finding, however, the Court finds that the other three factors favor denial of the motion. The amendment is not important to the extent that Adams will not be left

without a lawsuit should the Court deny the motion; he has numerous other claims pending. *See Meaux Surface Prot, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010). In *Meaux*, the Fifth Circuit colorfully held that "[w]ithout lost profits, Meaux would have no remaining theory of recovery. Because disallowing the amendment would have left Meaux dead in the water, the court held that modification of the pretrial order was 'warranted to prevent substantial injustice.' This finding is watertight." *Id.* at 167. That is not the case here.

Moreover, the Court finds that defendants would suffer substantial prejudice were it to grant the motion, and this Court can not definitively state that any continuance will be granted. The deadlines are fast approaching, and the parties have already submitted their witness and exhibit lists for trial. To some extent, discovery would have to be re-opened, and (as outlined below), that is not a certainty. While Adams states that defendants have all of the discovery that they need, this Court can not simply take Adams' word that his opposing parties have everything that they need to defend themselves in this lawsuit when defendants affirmatively state to the Court that they simply do not. This is an old lawsuit, and the District Court has continued it on numerous occasions. The Court simply can not allow Adams to alter the lawsuit at this point. Given these findings, this Court need not reach Rule 15. The motion is denied.

## III. The Motion to Compel

The District Court ordered Adams to propound proposed stipulations as to facts and the authenticity of documents on defendants. At a status conference, she ordered the parties to engage in good faith negotiations over the stipulations to resolve as many issues as possible prior to trial.

Adams complied with the order, and, after an agreed-to continuance, defendants responded.

Defendants only agreed to three of 15 stipulations, despite that the other 12 are allegedly matters of public record and undisputed, such as the arrest of Roland Burns and the vacatur of Adams' conviction by Judge Laurie White. Defendants refuse to stipulate to the authenticity of any of the documents. Adams argues that defendants have failed to engage in good faith negotiations to stipulate to undisputed facts or even to propose alternative language for said stipulations.

Adams contends that defendants wholly fail to provide factual bases for their refusal to stipulate to the proposed facts. He notes that the City simply states that it refuses to stipulate because the DA's office refuses to stipulate. Adams maintains that defendants are wasting the Court's – and, in the future, the jurors' – resources and time by refusing to stipulate.

In the alternative, Adams asks the Court for leave to propound requests for admission on defendants.

The City argues that a stipulation is by its very nature voluntary and can not be compelled. The City also notes that the District Court has already denied Adams' request to propound further requests for admission after the deadline for written discovery, and Adams simply seeks to circumvent this order.

The City contends that it only qualified its response to the stipulations because it does not seek to undermine Cannizzaro's defense by stipulating to anything to which he will not. It notes that the District Court only ordered that it respond to the proposed stipulation and, wherever possible, offer proposed revisions. It did so, even offering some revisions. The City contends that Adams's motion is simply an "I didn't get what I want" motion.

The City argues that proposing revisions to 225 proposed stipulations could potentially lead to the disclosure of its trial strategy. Citing Fifth Circuit case law, it maintains that courts

have consistently recognized a party's discretion to reject a factual stipulation, even if true.

Defendants note that Adams has asked defendants to stipulate to the authenticity of over 110,000 documents, which is in and of itself unreasonable. The vast majority of said documents were not created by the DA's office, and the police report at the crux of this matter has no author.

Defendants also note that no judge has found Adams factually innocent, and the statue under which he seeks compensation bars him from using any vacatur of his conviction as proof in a civil action.

With regard to the other cases on which Adams seeks to rely to prove his *Brady* claim, Defendants contend that none of them is similar to Adams', and the Supreme Court has held that dissimilar cases can not prove municipal liability.

After the oral hearing, the Court ordered the parties to meet and confer in good faith in an attempt to reach an agreement as to more of the proposed stipulations. The parties have done so and have informed the Court of their efforts, which are on-going.

"Rule 16 of the Federal Rules of Civil Procedure does not authorize a court to force parties to stipulate to facts to which they will not voluntarily agree." *J.F. Edwards Const. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F. 2d 1318, 1322 (7th Cir. 1976); *see also Identiseal Corp. of Wisconsin v. Positive Identification Sys., Inc.*, 560 F. 2d 298, 302 (7th Cir. 1977) ("The language of the rule does not, by its terms, confer upon the court the power to compel the litigants to obtain admissions of fact and of documents even if it is clear that such admissions would simplify the trial of the case. Instead, the rule requires the parties to appear and consider the possibility of admissions which would lessen their task at trial."); *see also Parr v. United States*, 255 F. 2d 86, 88 (5th Cir. 1958) ("It is a general rule that 'A party is not required to accept a judicial admission

of his adversary, but may insist on proving the fact.' The reason for the rule is to permit a party 'to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight.'"); *United States v. Sewell*, 457 F.3d 841, 844 (8th Cir. 2006) ("Generally, 'the prosecution is entitled to prove its case by evidence of its own choice,' and 'a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.'"). This Court can not order a party to stipulate to a fact or to the authenticity of a document if the Court does not consent to do so.   The motion is denied in this regard.

The motion is also denied to the extent that Adams seeks leave to propound requests for admission after the discovery deadline.   The District Court has already denied this request, and this Court agrees.

## IV.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Quash Deposition of Subpoena for Michal Magner, Adams's Attorney of Record, or for a Protective Order [Doc. #194] is GRANTED.

**IT IS FURTHER ORDERED** that the Motion for Leave to File a Third Amended Complaint [Doc. #196] is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Defendants to Provide Good-Faith Responses to Plaintiff's Court-Ordered Proposed Stipulations [Doc. #209] is DENIED.   **HOWEVER**, and because the parties have already done so, the Court orders the parties to meet and confer in good faith one more time **no later than ten (10) days from the date of this Order**, and to continue their on-going efforts to resolve as many disputed issues before

trial.

All requests for fees and costs are denied.

New Orleans, Louisiana, this 17th day of May, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**